**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CLARENCE GOURDINE,

                                        Plaintiff,

            - v -                                                           Civ. No. 9:03-CV-1048
                                                                                     (DNH/RFT)
C. LACROIX, R. DOLING, Commissioner Hearing
Officer, and DONALD SELSKY, Director of Special
Housing,

                                        Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

CLARENCE GOURDINE
Plaintiff, *Pro Se*
86-A-1724
Attica Correctional Facility
Box 149
Attica, NY 14011-0149

HON. ELIOT SPITZER                                  NANCY G. GROENWEGEN, ESQ.
Attorney General for the State of New York          Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                        **REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Clarence Gourdine brings a civil action pursuant to 42 U.S.C. § 1983,

alleging violations of his due process rights pursuant to the Fourteenth Amendment in regards to his

Superintendent's Hearing.  Dkt. No. 1, Compl. at ¶ 5 & First-Third Cause.  Defendants C. Lacroix,

Sergeant at the Great Meadow Correctional Facility ("Great Meadow"), R. Doling, Commissioner

Hearing Officer, and Donald Selsky, Director of Special Housing, bring this Motion for Summary

Judgment.  Dkt. No. 23.  Plaintiff opposes the Motion.  Dkt. No. 28.  For the reasons to follow, it is

recommended that the Motion for Summary Judgment be **granted**.

## I. FACTS[1]

On March 5, 2002, Defendant Lacroix issued a written misbehavior report to Plaintiff

charging him with violations of Prison Rules 103.20, attempt to solicit, 107.11, harassment of

personal nature, and 107.10, interference with employee.  Defs.' 7.1 Statement at ¶ 1; Compl. at

Factual Allegations, ¶ 2, Ex. A.  The misbehavior report states that Plaintiff approached Civilian

Cook J. Pagano to make an inquiry as to whether Pagano "would like to have some extra money like

the other civilian cook (J. McMurray) who [had been] caught bringing in drugs."  Defs.' 7.1

Statement at ¶ 2; Compl., Ex. A.  Pagano told Defendant Lacroix that "he felt that [Plaintiff] was

trying to get Pagano to bring in drugs for Gourdine by continuing to ask him about the extra

money."  Defs.' 7.1 Statement at ¶ 2; Compl., Ex. A.  As a result, Plaintiff was removed from food

service employment and locked up.  Defs.' 7.1 Statement at ¶ 2; Compl., Ex. A.  The misbehavior

report was issued based on two interdepartmental communications, dated February 27 and March 1,

2002, that Pagano had provided to Deputy Superintendent for Security Vanguilder.  Defs.' 7.1

Statement at ¶ 3, Nancy Groenwegen Decl., Ex. A, Interdepartmental Comm., dated Feb. 27, 2002

& Mar. 1, 2002.

On March 8, 2002, a Tier III Superintendent's Hearing was conducted by Defendant Doling,

which was continued on March 12 & 15, 2002.  Defs.' 7.1 Statement at ¶ 4, Groenwegen Decl., Ex.

---

[1] Plaintiff's response to the Motion for Summary Judgment fails to comport with the requirements of the Local Rules for the Northern District of New York.  Plaintiff only submitted a Memorandum of Law and did not provide a Statement of Material Facts or any supporting documents.  *See* N.D.N.Y.L.R. 7.1(a).  Normally, if no Statement of Material Facts are filed, Defendants' Statement of Material Facts are deemed admitted.  N.D.N.Y.L.R. 7.1(a)(3).  This Court, nonetheless, will proceed to decide this Motion with the aid of Defendants' Statement of Material Facts and Plaintiff's Verified Complaint with Exhibits.

D, Hr'g Tr. at pp. 1 & 31; Compl. at Factual Allegations, ¶ 3, Ex. A.  After the misbehavior report and two interdepartmental communications were read into the record, Plaintiff pled not guilty to all charges.  Defs.' 7.1 Statement at ¶ 5, Groenwegen Decl., Ex. D, Hr'g Tr. at pp. 2-3; Compl. at Factual Allegations, ¶ 4.  Several people testified at the Superintendent's Hearing, including Pagano and Defendant Lacroix.  Defs.' 7.1 Statement at ¶ 5, Groenwegen Decl., Ex. D, Hr'g Tr.  On March 15, 2002, Plaintiff was found guilty of all three violations and the penalty imposed was 270 days in the Special Housing Unit ("SHU"), with corresponding loss of packages, commissary, and phone privileges.  Defs.' 7.1 Statement at ¶ 7, Groenwegen Decl., Ex. D, Hr'g Tr. at p. 34; Compl. at Factual Allegations, ¶ 11.

On March 15, 2002, Plaintiff appealed the Superintendent's Hearing.  Compl. at Factual Allegations, ¶ 12, Ex. G, Appeal Form to Commissioner Superintendent's Hr'g.  On April 26, 2002, the disciplinary determination was modified when Defendant Selsky provided a written memorandum to Superintendent Ricks and Plaintiff stating that the "description of [the] incident in [the] misbehavior report fails to support charge 107.10[, interference with employee.]"  Id. at ¶ 13, Ex. H, Mem., dated Apr. 26, 2002.  However, the penalty imposed was not modified.  Id., Ex. H, Review of Superintendent's Hr'g.  On May 5, 2002, Plaintiff then submitted a letter to Defendant Selsky for reconsideration of his appeal based on the dismissal of one of the charges.  Id. at ¶ 14, Ex. I, Lt., dated May 5, 2002.  On June 13, 2002, Plaintiff received a response from Selsky on the reconsideration of the appeal which stated that he did "not believe that there [were] sufficient grounds to reconsider the previous decision on that hearing" and that no other administrative action would take place.  Id. at ¶ 15, Ex. J, Lt., dated June 13, 2002.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier

*-4-*

of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.

1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities

and draw all reasonable inferences in favor of the nonmoving party. *Nora Beverages, Inc. v. Perrier*

*Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this

point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential*

*Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B.  Fourteenth Amendment Claims

### 1.  Misbehavior Report

Plaintiff claims that Defendant Lacroix violated his Fourteenth Amendment rights when

Lacroix "knew Plaintiff did not violate [the solicitation rule] and the other violations didn't support

[the] description of [the] incident." Compl. at First Cause.

The Second Circuit has held that "a prison inmate has no general constitutional right to be

free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862

(2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see Batista v. Goord*,

2005 WL 2179420, at *11 n.75 (N.D.N.Y. Aug. 28, 2005); *Pittman v. Forte*, 2002 WL 31309183, at

*5 (N.D.N.Y. July 11, 2002). Furthermore, if a prisoner is afforded the opportunity to have a

hearing, "the filing of unfounded charges does not give rise to a *per se* constitutional violation

actionable under § 1983." *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (quoting *Freeman v.*

*Rideout*, 808 F.2d at 953). In addition, "[t]here must be more such as retaliation against the prisoner

-5-

for exercising a constitutional right." *Pittman v. Forte*, 2002 WL 31309183, at *5 (citing *Franco v. Kelly*, 854 F.2d at 588-590); *see also Boddie v. Schnieder*, 105 F.3d at 862; *Batista v. Goord*, 2005 WL 2179420, at *11 n.75.

Here, Plaintiff alleges that Defendant Lacroix knew that Plaintiff had not committed the rule violations but nevertheless wrote a misbehavior report.  Plaintiff has no constitutional right to be free from false accusations in a misbehavior report.  Moreover, Plaintiff was afforded an opportunity to have a hearing based upon the report and thus there is no *per se* constitutional violation actionable under § 1983 unless Plaintiff alleged that something else resulted from his exercise of a constitutional violation, such as retaliation.  In this case, Plaintiff makes no such claim. *See generally* Compl. at Factual Allegations.

## 2.  Superintendent's Hearing

Plaintiff alleges Defendant Doling violated his due process rights when the evidence did not support Doling's finding of guilt.  Compl. at Second Cause.  Furthermore, Plaintiff purports that Defendant Selsky violated his due process rights by "failing to review [the] hearing tape and acknowledge the errors [Doling] made throughout the hearing." *Id.* at Third Cause.

The Fourteenth Amendment to the Constitution states that "no State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. 472, 484.  "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 37 F. Supp. 2d 162, 167 (N.D.N.Y.), *vacated and remanded on other*

*grounds by* 238 F.3d 223 (2d Cir. 2001) (citing *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996)).  In *Sandin*, the Supreme Court ruled that the Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prisoner life." 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d at 225 (citing *Sandin*, 515 U.S. at 484); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).  Thus, a prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed such an "atypical and significant hardship." *See Sandin*, 515 U.S. at 484.

Factors relevant to an analysis of what constitutes an atypical and significant hardship include:  "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary confinement." *Spaight v. Cinchon*, 1998 WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (stating that in assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation omitted)).  Though the length of the confinement is one guiding factor in a *Sandin* analysis, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (citations omitted).  However, "[w]here the plaintiff was confined for an intermediate duration--

-7-

between 101 and 305 days–'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000)); *see also Hanrahan v. Doling*, 331 F.3d 93, 97-98 (2d Cir. 2003) ("[W]here the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest."); *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that segregative sentences of 125-288 days are "relatively long" and therefore necessitate "specific articulation of . . . factual findings before the district court could properly term the confinement atypical or insignificant"). Accordingly, the court must "make a fact-intensive inquiry" that would examine the actual conditions of confinement within SHU. *Palmer v. Richards*, 364 F.3d at 65 (citations omitted); *see also Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997) .[2] If the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *Palmer v. Richards*, 364 F.3d at 65. If, however, normal conditions of SHU exist, but the period of confinement is longer than the intermediate duration, then it would constitute a significant departure from ordinary prison life requiring the protection of procedural due process under *Sandin*. *Id.*

Here, Plaintiff must make the threshold showing of an atypical and significant hardship since a claim of denial of due process was asserted. Gourdine received 270 days in SHU along with 270 days loss of certain privileges. This amount of time spent in SHU falls within the intermediate duration requiring an examination of the conditions of confinement. Plaintiff does not provide any

---

[2] Department of Correctional Services policies provide the conditions of confinement prisoners are subject to when confined in SHU. *See* N.Y. COMP. CODES R. & REGS. tit. 7, §§ 304.1-.14 & 305.1-.6.

information as to his conditions of confinement as the issue was not addressed. *See* Compl.; Dkt. No. 28, Pl.'s Mem. of Law. Defendants, as well, do not address the issue of Plaintiff's conditions of confinement. *See* Dkt. No. 23, Defs.' Mem. of Law. Therefore, the Court assumes that the conditions of confinement were no more restrictive than necessary pursuant to Department of Correctional Services policies. *See supra* note 2. Since there is no dispute as to the conditions and because the period of confinement fell within the intermediate range, Plaintiff has failed to show there was an atypical and significant hardship as to afford the protection provided for by procedural due process.

Nevertheless, had Plaintiff asserted that a liberty interest was implicated, we note that "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d at 69 (citing *Wolff v. McDonnell*, 418 U.S. 563-67)) (further citations omitted).

The Supreme Court has noted that in identifying safeguards of due process, it has acknowledged the genuine need of prisons to ensure the safety of inmates, obviate "burdensome administrative requirements that might be susceptible to manipulation, and [to] preserv[e] the disciplinary process as a means of rehabilitation." *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 454-55 (1985) (citations omitted). In terms of judicial review regarding the written findings of the disciplinary proceeding as required by due process, the Supreme Court has held:

requirements of due process are satisfied if some evidence supports the decision by the

prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927). Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *See ibid.; United States ex rel. Tisi v. Tod*, 264 U.S. 131, 133-134 (1924); *Willis v. Ciccone*, 506 F.2d 1011, 1018 (CA8 1974). We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. *See Wolff*, 418 U.S., at 562-563, 567-569.

*Hill*, 427 U.S. at 455-56.

The Second Circuit has interpreted "some evidence" to mean that there must be some "reliable evidence." *Luna v. Pico*, 356 F.3d at 488. Examples of cases when not even "some evidence" was found in a disciplinary proceeding include when a corrections officer made a statement that "every inmate" in a mess hall participated in a riot and an inmate was found guilty based on that statement, and when an inmate was found guilty based on information provided by a confidential informant but there had been no examination of the informant's credibility. *Id.* (citing *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) & *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001)).

Plaintiff purports that there was insufficient evidence at his Superintendent's Hearing to find him guilty of the rule violations. because the testimony of Pagano and Sergeant Lacroix were inconsistent. Compl. at ¶¶ 9 & 10. Since there is a claim for insufficiency of the evidence, the Court must examine whether there was some reliable evidence presented at the Superintendent's Hearing to support a finding of guilt.

Civilian Cook Pagano stated to Defendant Lacroix that Plaintiff had approached him on

*-10-*

February 27, 2002, and discussed a previous cook's dealings with drugs to earn some extra money and wondered if Pagano wanted to make some extra money.  Groenwegen Decl., Ex. D, Hr'g Tr. at p. 2.  Plaintiff, however, claimed that Pagano had in fact offered Plaintiff marijuana and that Pagano had initiated the conversation dealing with the other cook's drug activities.  *Id.* at pp. 4-5.  Pagano testified as to the events that occurred and stated that Plaintiff had initiated the conversation.  *Id.* at p. 10.  Pagano told the hearing officer, Defendant Doling, that he went to his supervisor after the encounter who in turn told Pagano to inform Sergeant Lacroix.  *Id.*  Defendant Lacroix had Pagano write a memorandum regarding the events that had transpired to Vanguilder, Deputy Superintendent for Security.  *Id.* at p. 11.  Pagano submitted two memoranda as he had been approached for a second time that same day on February 27 by Plaintiff.  *Id.* at p. 12.  The conversation was similar to that earlier in the day.  *Id.* at p. 13.  Next, Vanguilder testified that after receiving the report from Pagano, an investigation was conducted to make sure there was enough information to generate a misbehavior report.  *Id.* at p. 23.  At the hearing, Sergeant Lacroix was also called as the last witness.  Lacroix stated that Pagano approached him fifteen minutes after the conversation with Plaintiff to inform him of the incident.  *Id.* at p. 27.  Because Pagano and Lacroix took some time off, and Lacroix was awaiting Pagano's memoranda on the incident, the misbehavior report was written and served several days after the incident.  *Id.* at pp. 27-28.  Considering that Gourdine spoke with Pagano when no one was around, or if someone else approached the conversation would cease, and based upon his twenty-one years of experience, Lacroix felt that this was a scheme to compromise civilians and security staff, and, therefore, issued the misbehavior report.  *Id.* at pp. 29-30.  Based on all the information, Defendant Doling made his finding of guilt.  *Id.* at p. 34.

There was clearly some reliable evidence presented at the Superintendent's Hearing that

allowed Defendant Doling to make such a determination.  The reliable evidence was testimony by the relevant witnesses, such as Pagano, who had the conversation with Plaintiff, as well as other witnesses which included Sergeant Lacroix and Vanguilder, and documentary proof.  The evidence was reliable as Pagano, who had the conversation with Plaintiff, testified along with the Sergeant who had written the misbehavior report  and Vanguilder who had conducted an investigation into the incident.  Therefore, there was sufficient evidence presented to comport with the "some evidence" standard.

As there was sufficient evidence to make a finding at the Hearing, Defendant Selsky did not violate Plaintiff's due process rights.  Plaintiff asked Selsky for reconsideration of his appeal from the Superintendent's Hearing and Selsky responded that he did "not believe that there [were] sufficient grounds to reconsider the previous decision on that hearing." *Id.* at ¶¶ 14 & 15, Exs. I, Lt., dated May 5, 2002, & Ex. J, Lt., dated June 13, 2002.  Although Plaintiff states that Selsky failed to review the hearing tape and acknowledge errors made at the Hearing, Selsky's finding that the incident described in the misbehavior report did not support charge 107.10, interference with employee belies Plaintiff's argument.  Compl. at Factual Allegations, ¶ 13, Ex. H, Mem., dated Apr. 26, 2002.  Plaintiff's claims are unfounded as Selsky clearly reviewed Plaintiff's charges and dismissed one of the violations.

For the reasons stated above, it is recommended that the Motion for Summary Judgment be **granted** as to all Defendants.

### III.  CONCLUSION

For the reasons stated herein, it is

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 23) be **GRANTED**

*-12-*

and the entire Complaint be **DISMISSED**; and it is further

     **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

     Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE</u>**

**<u>APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72, 6(a), & 6(e).


Date:   March 16, 2006
        Albany, New York

 

_____

RANDOLPH F. TREECE
United States Magistrate Judge

*-13-*